# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

SHAWNDRE HOUSTON,

               Petitioner,            :     Case No. 1:22-cv-143

   - vs -                              District Judge Douglas R. Cole
                                         Magistrate Judge Michael R. Merz

BILL COOL, Warden,

                                       :
               Respondent.

# REPORT AND RECOMMENDATION

This habeas corpus case, brought by Petitioner Shawndre Houston with the assistance of counsel, is before the Court for decision on the merits of the Amended Petition (ECF No. 5), the State Court Record (ECF No. 10), the Return of Writ (ECF No. 11), and Petitioner's Reply (ECF No. 14). The Magistrate Judge reference in the case was recently transferred to the undersigned to more evenly distribute the Magistrate Judge workload in the District (Transfer Order, ECF No. 12).

**Litigation History**

On February 3, 2017, the Hamilton County grand jury indicted Houston on one count of aggravated murder in violation of Ohio Rev. Code § 2903.01(A) (count 1), two counts of murder in violation of Ohio Rev. Code § 2903.02(A) and (B) (counts 2, 3), one count of felonious assault in

violation of Ohio Rev. Code § 2903.11(A)(2), (count 4), and one count of having weapons while under disability in violation of Ohio Rev. Code § 2923.13(A)(3) (count 5). Counts 1 through 4 carried a firearm specification.

On Houston's motion, Count Five was severed and tried to the bench.  Houston was convicted and sentenced to twenty-four months imprisonment.  After a mistrial, a new jury convicted Houston on the remaining charges (except for one firearm specification) and he was sentenced to twenty-five years to life for aggravated murder and one year on the firearm specification.  On direct appeal, the Ohio First District Court of Appeals affirmed.  *State v. Houston*, 2020-Ohio-5421 (Ohio App. lst Dist. Nov. 25, 2020), appellate jurisdiction declined, 162 Ohio St. 3d 1411 (2021).

On February 23, 2021, Houston filed a *pro se* application to reopen his direct appeal in the Ohio Court of Appeals under Ohio R. App. P. 26(B), raising two claims of ineffective assistance of appellate counsel. The First District Court of Appeals denied the Application on June 24, 2021 (Entry, State Court Record, ECF No. 10, Ex. 22).  Neither the Return of Writ nor the LEXIS database indicates whether Houston appealed to the Supreme Court of Ohio.

Houston filed his original Petition for writ of habeas corpus in this Court March 20, 2022 (ECF No. 1).  As pleaded in the Amended Petition, he raises the following claims for relief:

> **Ground One:** The conviction lacks legally sufficient evidence violating the right of due process.
>
> **Supporting Facts:**  There was no evidence to support the required element of "prior calculation and design." There was no evidence that Houston was the shooter where shots were fired from a vehicle with another occupant. There was no physical evidene [sic] connecting Houston to the shooting.
>
> **Ground Two:**  The admission of prejudicial photos violated the right to a fair trial and due process

2

**Supporting Facts:** Multiple gruesome photographs from the autopsy were admitted to inflame the jury and appeal to their emtions [sic]. The cause of death was not an issue in this case. The photos were not introduced to prove any fact at issue, but to create revulsion in the minds of the jury members. This unconstitutionally prejudiced Houston's right to a fair trial and to due process of law.

**Ground Three:** Houston was denied the effective assistance of counsel.

**Supporting Facts:** Trial counsel obtained information from a juror suggesting that the verdict announced in court was not the verdict of the individual juror. Counsel failed to motion for the verdict to be set aside and failed to request that the court inquire regarding the validity of the verdict.

**Ground Four:** The jury verdict was not unanimous.

**Supporting Facts:** After the trial a juror approached defense counsel and disclosed that the verdict announced by the court was not the verdict of the juror. The juror was emotional and offered that she was pressured during deliberations.

**Ground Five:** The court's failure to provide the requested jury instructions deprived Houston of the right to a fair trial and due process.

**Ground Six:** Houston was deprived of his right to the effective assistance of appellate counsel.

(Amended Petition, ECF No. 5, passim).


# Analysis

## Ground One: Conviction on Insufficient Evidence


In his First Ground for Relief, Houston claims there was insufficient evidence to identify him as the shooter or to show prior calculation and design.

The First District Court of Appeals decided both these issues on the merits, concluding:

{¶17} In his first assignment of error, Houston contends that the evidence was insufficient to support his conviction. First, he argues that the state failed to present sufficient evidence to prove prior calculation and design.

{¶18} Houston was convicted of aggravated murder under former R.C. 2903.01(A). It provided that "[n]o person shall purposely, and with prior calculation and design, cause the death of another * * *." To show prior calculation and design, the state must show a "scheme designed to implement the calculated decision to kill." *State v. Coley*, 93 Ohio St.3d 253, 263, 754 N.E.2d 1129 (2001). Evidence of purpose does not automatically mean that the element of prior calculation and design also exists. *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 17. "All prior calculation and design offenses will necessarily include purposeful homicides; not all purposeful homicides have an element of prior calculation and design." *State v Jones*, 2020-Ohio-281, 151 N.E.3d 1059, ¶ 11 (1st Dist.), quoting *Walker* at ¶ 18. The phrase "prior calculation and design" suggests advance reasoning to formulate the purpose to kill. Evidence of an act committed on the spur of the moment or after momentary consideration is insufficient. *Walker* at ¶ 18.

{¶19} The Ohio Supreme Court has repeatedly held that there is no "bright-line test that emphatically distinguishes between the presence or absence" of prior calculation and design. Instead, each case turns on its own facts. *Walker* at ¶ 19; *State v. Taylor*, 78 Ohio St.3d 15, 20, 676 N.E.2d 82 (1997); *Jones* at ¶ 13. In determining whether a defendant acted with prior calculation and design, courts should consider three factors: (1) Did the accused and the victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site? and (3) Was the act drawn out or "an almost instantaneous eruption of events?" *Walker* at ¶ 20; *Taylor* at 19; *Jones* at ¶ 13.

{¶20} Nothing in the record shows that Houston and Salter knew each other prior to the fight. During the fight, Salter punched Houston several times, and Houston had a black eye and other injuries. Security had broken up the fight and forced the participants out a side door. Outside, security guards formed "a wall" between Salter and some of the other participants, including Bush. According to Long, Salter was trying to de-escalate the situation, telling his friends to calm down.

{¶21} When told to leave, Houston walked to his car, turned on the dome light, and appeared to be searching for something on or around

4

the driver's seat. He drove his car through the lounge parking lot and the parking lot of the motel next door. He circled around the lot and passed the lounge entrance at least two, possibly three times. As soon as Salter started running away from the building, Houston drove by him with the driver's side of the car facing Salter. Salter was about two feet away from Thompson when Thompson saw a muzzle flash from the driver's side of the car and heard four or five gunshots. Salter fell to the ground bleeding and Houston drove away at a high rate of speed.

{¶22} The evidence showed that Houston gave thought and consideration to choosing the murder site and that the act was drawn out, rather than an instantaneous eruption of events after the fight. Compare *Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, at ¶ 23-26 (No prior calculation and design when the evidence showed a "free-for-all" and a shot was fired in the midst of the fight). Even though only a short period of time had passed, the facts were sufficient to show that Houston had "adopted a plan to kill." *See State v. Washington*, 1st Dist. Hamilton No. C-090561, 2010-Ohio-3175, ¶ 17. Thus, the state presented evidence from which a jury could reasonably have concluded that Houston acted with prior calculation and design.

{¶23} Houston next argues that there was no evidence showing that he was the assailant, and that, in fact, the evidence showed that Bush was the shooter. The eyewitnesses stated that Houston was driving the car and that Bush was seated in the back seat on the driver's side. Thompson saw Houston looking around the car for something before he got inside. Video footage showed that the driver's-side window was down right before the shooting and the back-seat window was closed. The flash came from the driver's seat. When the car was pulled over after the shooting, the back window on the driver's side was intact, indicating that a bullet had not been shot through the window.

*4 {¶24} After Houston walked to his car, Bush continued to act aggressively. Thompson said that when he put his hands on Bush, he felt what may have been a weapon under his coat. Bush continued to try to attack Salter, but was prevented from doing so by the security guards. Bush threatened Salter and the security guards, stating that "I carry heat." When Bush continued to be aggressive and refused to leave, Long tased him, although the Taser had little effect because of Bush's coat. But even after Long attempted to tase him, Bush did not show a weapon of any kind. Instead, he got into Houston's car.

5

{¶25} Gunshot residue was found on Hardy's and Bush's hands, but not Houston's. But, Houston was not tested for gunshot residue immediately. Because he was sweating profusely and appeared to be ill, the Springdale police called for EMTs, who tried to cool him down by wiping down his body with paper towels. Detective Langevin acknowledged that failing to test Houston's hands for gunshot residue before that time was a mistake.

{¶26} Nevertheless, gunshot residue was found on the cuff of Houston's jacket, and a forensic scientist who specialized in gunshot residue said the residue would float like a cloud all around the area where the gun was fired. Further, Houston's DNA was found on the magazine of the gun, but Bush's DNA was excluded. Thus, there was evidence was from which a jury could reasonably have found that Houston, not Bush, was the shooter.

{¶27} Houston points out that the jury did not find him guilty of a specification that he "had a firearm on or about his person or under his control while committing the offense of aggravated murder and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense * * *." Thus, Houston argues, the jury must have concluded that he was not the shooter. But the jury did find him guilty of a specification that he had a firearm on or about his person or under his control while committing aggravated murder. Thus, the acquittal on the one specification did not show that the jury believed Bush was the shooter.

{¶28} Further, inconsistent responses within the same count of an indictment, such as a conviction on a principal charge and a concurrent acquittal on a specification for identical behavior, do not mandate a reversal where the principal charge is not dependent on a finding of the specification. Similarly, acquittal on one specification and a guilty finding on another do not justify a reversal. *State v. Glenn*, 1st Dist. Hamilton No. C-090205, 2011-Ohio-829, ¶ 69.

{¶29} Our review of the record shows that a rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found that the state proved beyond a reasonable doubt all of the elements of aggravated murder and the accompanying specification. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Hackney*, 1st Dist. Hamilton No. C-150375, 2016-Ohio-4609, ¶ 29. Therefore, the evidence was sufficient to support the conviction, and we overrule Houston's first assignment of error.

6

*State v. Houston, supra.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. Respondent urges the Court to defer to the First District on this First Ground for Relief.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was

recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc);

8

*Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).

Houston asserts that the First District's decision is not entitled to deference under either 28 U.S.C. § 2254(d)(1) or (d)(2)(Reply, ECF No. 14, PageID 1244).  Although he does not cite *Jackson*, he acknowledges by the cases he does cite that the First District applied the correct standard.  However, he asserts it was unreasonably applied.

**Prior Calculation and Design**

As Houston argues, aggravated murder differs from murder under Ohio law in that the *mens rea* for murder is that the accused acted with the purpose to kill, whereas aggravated murder requires proof of the additional element of prior calculation and design.  *State v. Walker*, 150 Ohio St.3d 409 (2016), ¶ 1 of the syllabus.  These elements are distinct and both must be proven for an

9

aggravated murder conviction. *Id.* In *Walker* the Supreme Court of Ohio found the evidence was insufficient to show prior calculation and design. *Walker* was, like this case, a bar fight case where a melee erupted between two groups of people and ended in a shooting death.

In reaching its conclusion in *Walker*, the Ohio Supreme Court wrote:

> {¶ 19} Since the enactment of R.C. 2903.01 in 1974, we have repeatedly emphasized that there is no "bright-line test that emphatically distinguishes between the presence or absence of 'prior calculation and design.' Instead, each case turns on the particular facts and evidence presented at trial." *Taylor,* 78 Ohio St.3d at 20, 676 N.E.2d 82 (1997); *State v. Braden,* 98 Ohio St.3d 354, 2003-Ohio-1325, 785 N.E.2d 439, ¶ 61; *State v. Maxwell,* 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 148.

> {¶ 20} We traditionally consider three factors in determining whether a defendant acted with prior calculation and **1129 design: "(1) Did the accused and victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site? and (3) Was the act drawn out or 'an almost instantaneous eruption of events?'" *Taylor* at 19, quoting *State v. Jenkins,* 48 Ohio App.2d 99, 102, 355 N.E.2d 825 (8th Dist.1976).

> {¶ 21} We have upheld aggravated-murder convictions, holding that prior calculation and design existed when a defendant threatened to obtain a weapon and kill his victim and later carried out that plan. *State v. Sowell,* 39 Ohio St.3d 322, 333, 530 N.E.2d 1294 (1988). *See also State v. Toth,* 52 Ohio St.2d 206, 213, 371 N.E.2d 831 (1977), and *State v. Cassano,* 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, at ¶ 80–84 (both upholding aggravated-murder convictions when the defendant had previously threatened to kill the victim). Shooting a person execution-style may also establish, at least in part, prior calculation and design. *State v. Palmer,* 80 Ohio St.3d 543, 569–570, 687 N.E.2d 685 (1997); *Braden* at ¶ 65, citing *State v. Campbell,* 90 Ohio St.3d 320, 330, 738 N.E.2d 1178 (2000).

> *The* Taylor *Case*

> {¶ 22} The court of appeals decided Walker's case by applying the factors in *Taylor* at 19, 676 N.E.2d 82. In *Taylor,* another bar-homicide case, the circumstances surrounding the shooting show a scheme designed to implement the calculated decision to kill. Taylor knew his victim, who had previously dated Taylor's girlfriend. *Id.* at

10

21–22, 676 N.E.2d 82. And knowing that the victim frequently drank at a certain bar, Taylor chose to take a gun there. He, the girlfriend, and the victim had all been drinking at the bar for 20 to 30 minutes before he shot the victim after an argument. *Id.* at 22, 676 N.E.2d 82. As the victim lay wounded on the floor after several shots, Taylor approached and fired three or four more shots in the victim's back. *Id.* at 22, 676 N.E.2d 82. Pursuing and killing a fleeing or incapacitated victim after an initial confrontation strongly indicates prior calculation and design. *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 45, citing *State v. Robbins,* 58 Ohio St.2d 74, 78–79, 388 N.E.2d 755 (1979), *State v. Claytor,* 61 Ohio St.3d 234, 241, 574 N.E.2d 472 (1991), and *415 Cotton,* 56 Ohio St.2d at 9–10, 381 N.E.2d 190. *See also Palmer,* 80 Ohio St.3d at 569–570, 687 N.E.2d 685 (after victim had fallen to the ground, defendant shot the victim in the head in an execution-style manner).

*Walker, supra.*

In its own analysis in this case, the First District recognized the authority of *Taylor* and *Walker*, but emphasized the holding in both cases that the determination of prior calculation and design had to be made on a case-by-case basis. *Houston, supra,* at ¶ 19. It acknowledged there was no evidence Houston knew the victim, Salter, prior to the night in question. *Id.* at ¶ 20. However, Houston did not kill Salter with an improvised weapon in the course of the bar fight. Instead, he left the bar, went to his car, and retrieved the murder weapon – a gun, not a tire iron or other object typically found in a car with a function other than killing.[1] And then he lay in wait for Salter, driving around the bar parking lot two or three times, waiting from Salter to emerge and then shooting him. *Id.* at ¶ 21.

*Walker* sharply divided the Ohio Supreme Court, with the three dissenting Justices citing numerous cases where the time between the precipitating incident and the killing was quite short. In particular they cite to the capital case of *State v. Palmer,* 80 Ohio St.3d 543, 567–568, 687

---

[1] A prominent American product designer, involved for many years in the design of the Apple iPhone, has commented that products, particularly including guns, usually end up doing what they are designed to do. Private communication with the undersigned.

N.E.2d 685 (1997), where the court had

> explained that sufficient evidence of prior calculation and design existed when, after being involved in a minor accident with a pickup truck, Donald L. Palmer Jr. exited the vehicle with a loaded revolver that was cocked and ready to fire and shot the truck's driver, Charles Sponhaltz, twice in the head. *Id.* at 543, 687 N.E.2d 685. Although the killing took only moments, we concluded that "[t]he evidence, when viewed in a light most favorable to the state, was more than sufficient to show that [Palmer] had adopted a plan to kill Sponhaltz prior to exiting [the] vehicle and that, with a level of precision, [Palmer] followed through on his calculated decision to kill." *Id.* at 569, 687 N.E.2d 685.

*Walker, supra,* dissenting opinion of Justice O'Donnell.

Houston asserts the First District did not apply the analysis required by *Walker* and *Taylor*, but it did. It found in Houston's favor on the question whether the victim and defendant knew one another, but in fact they knew one another from the course of the evening's event, far longer than Donald Palmer knew Charles Sponhaltz[2]. And on the other two questions – choice of weapon and taking time to plan – it reasonably found Houston took sufficient time to plan. Houston does not dispute the underlying fact finding by the Court of Appeals: the gun was in the car, not on Houston's person, and sufficient evidence established he drove around the parking lot two or three times Before Salter emerged from the bar.

The test in habeas is not whether every reasonable juror would have found prior calculation and design. Rather it is whether any reasonable juror could have found that element beyond a reasonable doubt. Given the close division of the Ohio Supreme Court on very similar facts in *Walker*, the Court cannot say no reasonable juror could have reached the same decision this jury did. Ground One should therefore be dismissed on the merits as to the prior calculation and design element.

---

[2] The undersigned is familiar with the Palmer case, having adjudicated it in habeas corpus.

**Identity of the Shooter**

Houston also claims there was insufficient evidence to identify him as the shooter.  The First District reasonably disagreed.  The "alternative suspect" on whom Houston focuses, Bush, was indeed in Houston's car on the driver's side when the fatal shot was fired. Houston's DNA was on the gun but Bush's was not.  There was gunshot residue on Bush's hand but the medically-suggested wipe down of Houston could account for its absence there, and gunshot residue was found on the cuff of Houston's jacket.. Bush had behaved aggressively toward Salter, but so had Houston.  Concluding there was sufficient evidence to identify Houston as the shooter was not an unreasonable application of *Jackson, supra*.  Therefore the First Ground for Relief should be dismissed as to this claim as well.

**Ground Two:  Admission of Prejudicial Photographs**

Respondent  asserted in the Return that this claim was not cognizable in habeas and Petitioner has abandoned it without making a responsive argument in he Reply.

**Grounds Three and Four:  Ineffective Assistance of Trial Counsel:  Failure to Challenge Unanimity of the Verdict and Conviction on a Non-Unanimous Verdict**

In his Third Ground for Relief, Houston claims he received ineffective assistance of trial counsel when his attorney did not challenge the verdict as non-unanimous; the Fourth Ground for Relief raises the underlying claim that the verdict as not in fact unanimous.

The First District Court of Appeals rejected the ineffective assistance of trial counsel claim

on the grounds that, after the jury was polled, the trial court accepted the verdict and this foreclosed

further challenge to the verdict under Ohio law in the absence of evidence *aliunde* the record.

*Houston, supra*, at ¶¶ 51-52.  Applying the applicable standard from *Strickland v. Washington,*

466 U.S. 668 (1984), the First District found no prejudice arising from counsel's failure to move

for a new trial because any post-jury-poll second thoughts by a juror are not cognizable absent

*aliunde* evidence[3].  Houston offers no response to this defense in the Reply.  It cannot be ineffective

assistance of trial counsel to fail to move for relief when the law prevents the court from granting

that relief.

As of the time of Houston's trial in September 2019, it was not a violation of the United

States Constitution to convict someone on a non-unanimous jury verdict.  *Apodaca v. Oregon*, 406

U.S. 404 (1972).  The Supreme Court overruled *Apodaca* in *Ramos v. Louisiana*, 590 U. S. ___,

140 S. Ct. 1390, 206 L. Ed. 2d 583 (Apr. 20, 2020).  However, in *Edwards v. Vannoy*, 593 U.S.

___, 141 S. Ct. 1547 (2021), the Court held *Ramos* does not apply retroactively to cases on

collateral review. Federal habeas corpus is available only to correct federal constitutional

violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S.

764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).

"[I]t is not the province of a federal habeas court to reexamine state court determinations on state

law questions.  In conducting habeas review, a federal court is limited to deciding whether a

conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*,

502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160

(1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J.

concurring).  To the extent Houston's Sixth Ground for Relief relies on the United States

---

[3] The juror in question had affirmed her vote during a jury poll before she approached defense counsel.

Constitution, it is without merit.

To the extent it relies on Ohio law, it is not cognizable in habeas. Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).

**Ground Five: Failure to Provide Requested Jury Instructions**

In his Fifth Ground for Relief, Houston claims that the trial court's refusal to give requested jury instructions deprived him of due process and a fair trial. Respondent asserts this claim is procedurally defaulted by failure to raise it on direct appeal to the Supreme Court of Ohio (Return, ECF No. 11, PageID 1237).

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'"  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009).  This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004).  "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)].  The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine.  See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). "[A] federal court may not review federal claims that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6th Cir. 2020), citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).

Petitioner defends against the procedural default defense by arguing he can show cause and prejudice to excuse the default (Reply, ECF No. 14, PageID 1254).  However, his argument is addressed only to his failure to obtain review on denial of his 26(B) Application. *Id.* The Warden

asserts this claim is defaulted because it was not raised on direct appeal. There is indeed no Proposition of Law on direct appeal that presents this jury instruction claim to the Ohio Supreme Court (See Memorandum in Support of Jurisdiction, State Court Record, ECF No. 10, PageID 226). Houston has offered no excusing cause for this omission. Therefore Ground Five should be dismissed as procedurally defaulted.

**Ground Six: Ineffective Assistance of Appellate Counsel**

In his Sixth Ground for Relief, Houston asserts he was deprived of the effective assistance of appellate counsel in the following respects:

> 1. Appellate counsel failed to raise the issue of prosecutorial misconduct in the presentation of evidence that was false.
>
> 2. Appellate counsel failed to raise the issue of trial counsel's ineffectiveness in failing to object to this prosecutorial misconduct, in failing to move the court to strike the testimony and/or request a mistrial.

(Amended Petition, ECF No. 5, PageID 84).

Houston raised this claim in his 26(B) Application and the First District decided it as follows:

> In his application, Houston asserts that his appellate counsel was ineffective for not assigning as error prosecutorial misconduct in knowingly eliciting from Thompson "false/perjured testimony" and ineffective assistance of trial counsel in not moving for a mistrial on that basis. At Houston's second trial, Thompson testified, "I saw [Houston] going to his car. And then it look[ed] like he opened up his car door and was like looking for something. Like there was a dome light that came on, it looked like he was looking for something. And then the next time I saw Mr. Houston was when he was driving around the parking lot." That testimony, Houston argues, was shown to be false when, on cross-examination, Thompson agreed that, at the first trial, he had said nothing about

17

seeing Houston near, or looking for something in, his car and could not identify Houston as the man driving the car around the nightclub's parking lot.

The proposed assignments of error depend for their resolution upon a determination that Thompson lied when he testified at the second trial that he had seen Houston enter and look for something in the car and then drive the car around the parking lot. In support of his challenge to appellate counsel's effectiveness in failing to assign those matters as error, Houston points to evidence in the trial record-the cruiser video of his apprehension and Thompson's testimony in the first trial-and offers evidence outside the trial record-Thompson's statement to police and affidavits made by two individuals familiar with Houston's car, averring that its dome light had never worked.

To the extent that the proposed assignments of error depend for their resolution upon evidence outside the trial record, a postconviction petition is the appropriate vehicle for advancing those challenges. See *State v. Perry,* 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus. Thus, appellate counsel cannot be said to have been ineffective in failing to challenge Houston's convictions in the direct appeal based on that evidence.

Moreover, appellate counsel presented on appeal assignments of error challenging the weight and sufficiency of the evidence to support Houston's aggravated murder conviction. Specifically, appellate counsel argued that the evidence was legally insufficient to prove that Houston had acted with prior calculation and design or had been the shooter. This court overruled the legal-sufficiency challenge upon its determination that the state had presented evidence from which a jury could reasonably have concluded that Houston had acted with prior calculation and design and had been the shooter. The evidence the court cited in support of that determination included, but was not limited to, Thompson's testimony in the second trial that he had seen Houston enter, appear to search for something in, and drive the car from which the fatal gun shots were discharged. See *Houston*, C-190598, 2020-Ohio-5421, at ¶¶ 20-29. Thus, this court did not deem Thompson's testimony to have been wholly discredited by his admission on cross-examination that he had not testified in the first trial to seeing Houston entering or driving the car. Nor does the record otherwise demonstrate that that testimony was false. Accordingly, Houston's proposed assignments of error, alleging prosecutorial misconduct in knowingly eliciting perjured testimony and ineffective assistance of trial counsel in failing to move for a mistrial on that ground, would

not have presented a reasonable probability of success had appellate counsel advanced them on appeal.

Houston has failed to demonstrate a colorable claim of ineffective assistance of counsel on appeal. Accordingly, the court denies his application to reopen this appeal.

(Opinion, State Court Record, ECF No. 10, PageID 356-58).

The Warden asserts this Ground for Relief is procedurally defaulted because Houston did not appeal to the Supreme Court of Ohio from denial of his ineffective assistance of appellate counsel claim in the First District (Return, ECF No. 11, PageID 1238). He claims that Houston fails to proffer any excusing cause for this default in the Petition.

In the Reply, Houston notes that he filed with his Amended Petition his Affidavit to the effect that the Clerk of the First District did not forward the decision denying the 26(B) Application until well after the time to appeal had expired and he corroborates that with a copy of the envelope showing a postmark of December 21, 2021 (ECF No. 5, PageID 92). The State Court Record shows the decision was entered June 24, 2021, with a legend asserting service on all parties (ECF No. 10, PageID 358). Because this material was furnished with the Amended Petition, the Warden could have responded in the Return, but did not do so. The Magistrate Judge finds Houston has shown excusing cause; prejudice consists in the Ohio Supreme Court's absolute refusal to accept delayed appeal in collateral proceedings.

On the merits, the Magistrate Judge notes that the First District applied the relevant controlling Supreme Court precedent, *Strickland, supra*. A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008).

The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285

(2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id*., *citing Wilson.* If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id., citing Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); see *Smith v. Murray*, 477 U.S. 527 (1986). "Only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of [appellate] counsel be overcome." *Dufresne v. Palmer*, 876 F.3d 248 (6th Cir. 2017), quoting *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008). However, failure to raise an issue can amount to ineffective assistance. *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004), *citing Joshua v. Dewitt,* 341 F.3d 430, 441 (6th Cir. 2003); *Lucas v. O'Dea*, 179 F.3d 412, 419 (6th Cir. 1999); and *Mapes v. Coyle,* 171 F.3d 408, 427-29 (6th Cir. 1999). Counsel can be ineffective by failing to raise a "dead-bang winner," defined as an issue which is obvious from the trial record and which would have resulted in a reversal on appeal, even

if counsel raised other strong but unsuccessful claims.  *Mapes, supra, citing Banks v. Reynolds*, 54 F. 3d 1508, 1515 n. 13 (10th Cir. 1995); see also *Page v. United States*, 884 F. 2d 300, 302 (7th Cir. 1989).  Stated differently, failure to raise a significant and obvious claim can amount to reversible error.  *Mapes v. Tate*, 388 F.3d 187, 192 (6th Cir. 2004).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions."  *McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000), citing *Strickland* and *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004), *citing Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001), *cert. denied*, 535 U.S. 940 (2002).  "Counsel's performance is strongly presumed to be effective."  *McFarland, quoting Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000)(*citing Strickland*).  "To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented." *Webb v. Mitchell,* 586 F.3d 383, 399 (6th Cir. 2009); *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986). Appellate counsel is not ineffective for failure to predict the development of the law. *Thompson v. Warden*, 598 F.3d 281 (6th Cir. 2010), *citing Lott v. Coyle,* 261 F.3d 594, 609 (6th Cir. 2001)(not ineffective assistance of appellate counsel to fail to anticipate *State v. Foster* in an appellate district which had ruled the other way.) *Accord, Carter v. Timmerman-Cooper*, 2010 U.S. App. LEXIS 10549 (6th Cir. 2010).

The First District decided the merits of this omitted assignment of error, applying the correct *Strickland* standard.  It found appellate counsel had raised assignments of error much more

likely of success than this claim, particularly the *Jackson v. Virginia* claim. It also found this assignment of error would have been unsuccessful. The Magistrate Judge agrees.

The proposed assignment of error was prosecutorial misconduct under *Napue v. Illinois*, 360 U.S. 264, 269 (1959). The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with the rudimentary demands of justice." *Workman v. Bell,* 178 F.3d 759, 766 (6th Cir. 1998), *quoting Giglio v. United States*, 405 U.S. 150, 153 (1972). This rule applies to both the solicitation of false testimony and the knowing acquiescence in false testimony. *Workman v. Bell*, 178 F.3d 759, 766 (6th Cir. 1998), *citing Napue v. Illinois*, 360 U.S. 264, 269 (1959). However, to prevail on such a claim, a petitioner must show that the statement in question was false, that the prosecution knew it was false, and that it was material. *Wogenstahl v. Mitchell*, 668 F.3d 307, 323 (6th Cir. 2012), *citing Rosenkrantz v. Lafler*, 568 F.3d 577, 583-84 (6th Cir. 2009); *Brooks v. Tennessee*, 626 F.3d 878, 894-95 (6th Cir. 2010); *Byrd v. Collins*, 209 F.3d 486 (6th Cir. 2000), *citing United States v. Lochmondy,* 890 F.2d 817, 822 (6th Cir. 1989); *United States v. O'Dell*, 805 F.2d 637, 641 (6th Cir. 1986). The statement must be indisputably false, rather than simply misleading. *Lochmondy*, 890 F.2d at 823; *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000). Mere inconsistencies in testimony do not establish the knowing use of perjured testimony. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).

Some of the material Houston relies on to show a *Napue* violation was material about the condition of Houston's car outside the trial record. As the First District noted, evidence *dehors* the trial record relied on to show a constitutional violation must be presented in a post-conviction petition under Ohio Revised Code § 2953.21; otherwise it is barred by the *res judicata* rule of *State v. Perry,* 10 Ohio St. 2d 175 (1967). The *Perry* rule has frequently been held to be an adequate and independent state ground for exclusion of evidence. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th

Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001). "[P]resentation of competent, relevant, and material evidence *dehors* the record may defeat the application of *res judicata*."  *State v. Lawson*, 103 Ohio App. 3d 307 (12th Dist. 1995). However, Ohio appellate courts do not accept new evidence on App. R. 26(B) Applications.

Moreover, Houston's 26(B) Application does not establish a *Napue* violation.  Like many habeas petitioners, Petitioner seems to believe that an inconsistency between present and past testimony will establish a *Napue* violation.  Not so.  Inconsistencies in witness's accounts of events are powerful ammunition for the cross-examiner, but by themselves they do not show prosecutorial misconduct.  In this case Houston did not establish that any of Thompson's testimony at the second trial was a lie, and inconsistencies were mainly shown by matter added at the second trial.  It would have been perfectly appropriate to argue to the second jury that the inconsistencies undermined Thompson's testimony, but it is a long way from there to proving the prosecutor knowingly presented perjured or even false testimony.  A motion for a mistrial would have been very unlikely to succeed; an assignment of error for ineffective assistance of trial counsel for not making that claim was certainly not a slam dunk winner.  Ground Six for Relief should be denied on the merits.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that

the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not

be permitted to proceed *in forma pauperis*.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.

July 15, 2022

s/ *Michael R. Merz*
United States Magistrate Judge